## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
_____

ANDREW FETHER,

                Plaintiff,

v.

HILLSDALE COUNTY, a Municipal Corporation;
HILLSDALE COUNTY SHERIFF DEPARTMENT,
HILLSDALE COUNTY SHERIFF
DEPARTMENT'S DEPUTY KWINN LEVA, in her
individual and official capacity, ASSISTANT
PROSECUTOR VALERIE WHITE, in her official
and individual capacity; MICHIGAN STATE
POLICE TROOPERS THOMAS HURST, CYNTHIA
GOCHANOUR, and TONY CUEVAS, and
MICHIGAN STATE POLICE SEX OFFENDER
REGISTRY ANALYSTS MELISSA MARINOFF
and MARCI KELLEY, in their individual capacities,
                Defendants.

Case No: 1:17-cv-878

Honorable:  Janet T. Neff

Magistrate Judge: Ellen S. Carmody

**PLAINTIFF'S RESPONSE TO
MICHIGAN STATE POLICE
DEFENDANTS HURST,
GOCHANOUR, CUEVAS,
KELLEY & MARINOFF'S
MOTION TO DISMISS**

_____/

Nicholas H. Klaus (P81076)
Klaus Law PLLC
P.O. Box 7506
Ann Arbor, MI  48107
313-757-2052
nicholas@klauslawpllc.com
*Attorney for Plaintiff*

Adam Paul Sadowski (P73864)
*Attorney for Defendants* Thomas Hurst,
Cynthia Gochanour, Tony Cuevas, Marci
Kelley & Melissa Marinoff
Michigan Department of Attorney General
Civil Litigation, Employment & Elections
525 W. Ottawa St.
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
sadowskia@michigan.gov

_____/

## PLAINTIFF'S RESPONSE TO MICHIGAN STATE POLICE DEFENDANTS HURST, GOCHANOUR, CUEVAS, KELLEY & MARINOFF'S MOTION TO DISMISS

NOW comes Plaintiff, ANDREW FETHER, by and through his attorneys, Klaus Law

P.L.L.C. and, for the reasons set forth in his attached brief, hereby respectfully requests that this

Honorable Court deny Michigan State Police Defendants Hurst, Gochanour, Cuevas, Kelley, and

Marinoff's Motion to Dismiss in its entirety.

1.      The applicable statute of limitation for Plaintiff's Fourteenth Amendment Equal Protection and Constitutional Defamation claims is the Michigan three-year general personal injury provision codified in MCL § 600.5805(10), which states in pertinent part: "the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property."

2.      Defendants' Motion to Dismiss and Brief in Support, provides no actual argument or controlling authority to support their position that Plaintiff's claims were untimely.

3.      Indeed, Defendants reserve merely a few sentences at best, in their *Brief in Support* to their contentions regarding the statute of limitation.

4.      Instead, Defendants devote the majority of their *Brief in Support* attempting to litigate a Fed. R. Civ. P. 12(b)6 motion for failure to state a claim, in spite of the Order of this Honorable Court directing the parties to *only* brief the issue of the applicable statute of limitation. (**R 30, PageID # 92**)

5.      Nevertheless, Plaintiff *does not* address the failure to state a claim issue raised by Defendants in their two and half page brief, and instead adheres to the Order of this Honorable Court, in briefing only the limited issue of the applicable statute of limitations.

WHEREFORE, Plaintiff ANDREW FETHER respectfully requests that this Honorable Court enter and order denying *Defendants' Motion to Dismiss Plaintiff's Complaint*.

Respectfully submitted,

KLAUS LAW P.L.L.C.,
/s/  Nicholas H. Klaus
Nicholas H. Klaus (P81076)
*Attorney for Plaintiff*
P.O. Box 7506
Ann Arbor, MI  48107
313-757-2052
nicholas@klauslawpllc.com

Dated:  June 5, 2018

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
_____

ANDREW FETHER,

                Plaintiff,

v.

HILLSDALE COUNTY, a Municipal Corporation;
HILLSDALE COUNTY SHERIFF DEPARTMENT,
HILLSDALE COUNTY SHERIFF
DEPARTMENT'S DEPUTY KWINN LEVA, in her
individual and official capacity, ASSISTANT
PROSECUTOR VALERIE WHITE, in her official
and individual capacity; MICHIGAN STATE
POLICE TROOPERS THOMAS HURST, CYNTHIA
GOCHANOUR, and TONY CUEVAS, and
MICHIGAN STATE POLICE SEX OFFENDER
REGISTRY ANALYSTS MELISSA MARINOFF
and MARCI KELLEY, in their individual capacities,

                Defendants.

Case No: 1:17-cv-878
Honorable:  Janet T. Neff
Magistrate Judge: Ellen S. Carmody

**PLAINTIFF'S RESPONSE TO
MICHIGAN STATE POLICE
DEFENDANTS HURST,
GOCHANOUR, CUEVAS,
KELLEY & MARINOFF'S
MOTION TO DISMISS**

_____/

Nicholas H. Klaus (P81076)
Klaus Law PLLC
P.O. Box 7506
Ann Arbor, MI  48107
313-757-2052
nicholas@klauslawpllc.com
*Attorney for Plaintiff*

Adam Paul Sadowski (P73864)
*Attorney for Defendants* Thomas Hurst,
Cynthia Gochanour, Tony Cuevas, Marci
Kelley & Melissa Marinoff
Michigan Department of Attorney General
Civil Litigation, Employment & Elections
525 W. Ottawa St.
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
sadowskia@michigan.gov

_____/

## <u>PLAINTIFF'S RESPONSE TO MICHIGAN STATE POLICE DEFENDANTS HURST, GOCHANOUR, CUEVAS, KELLEY & MARINOFF'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

**CONCISE STATEMENT OF THE ISSUE PRESENTED**…………………………………..iii

**CONTROLLING AUTHORITY**………………………………………………………………iv

**INDEX OF AUTHORITIES**………………………………………………………………v

**COUNTER STATEMENT OF FACTS**……………………………………………………...1

**ARGUMENT**………………………………………………………………………………..3

**I.  IN MICHIGAN THE APPLICABLE STATUTE OF LIMITATIONS IN § 1983 EQUAL PROTECTION AND CONSTITUTIONAL DEFAMATION IS THE THREE-YEAR PERSONAL INJURY PROVISION: MICHIGAN COMPILED LAWS § 600.5805(10)**………………………………………………………………………….3

    **a.  The Three-Year Statute of Limitation Applies to Constitutional Defamation Claims Brought Under § 1983**……………………………………………………………...7

**II.  PLAINTIFF'S CLAIMS ACCRUED ON OR AFTER SEPTEMBER 30, 2014 AND ARE THEREFORE TIMELY**……………………………………………………..10

    **a.  Alternatively, the "Continuing Violation" Doctrine Is Applicable In This Case, and Other § 1983 Cases Arising in Michigan**…………………………………………...12

**CONCLUSION**………………………………………………………………………16

## <u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>

1.   Whether Plaintiff timely filed his complaint within the applicable statute of limitations period?

Plaintiff's Answer:   YES
Defendants' Answer:  NO

## <u>CONTROLLING AUTHORITY</u>

**<u>Federal Cases</u>**

*Bell v. Ohio State Univ.*, 351 F.3d 240 (6th Cir. 2003) …………………………………………12

*Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) ……………………………………..........13

*Dixon v. Anderson*, 928 F.2d 212 (6th Cir. 1991) ………………………………...............10-14

*Owens v. Okure*, 488 U.S. 235 (1989)……………………………………………………….5, 6

*Paul v. Davis*, 424 U.S. 693 (1976)……………………………………………………….8, 9

*Wilson v. Garcia,* 471 U.S. 261 (1985) ……………………………………………3-6, 8, 10

*Wolfe v. Perry*, 412 F.3d 707 (6th Cir. 2005)…………………………………………………12

**<u>Federal Statutes</u>**

42 U.S.C. § 1983……………………………………………………………………………*passim*

**<u>Michigan Statutes</u>**

MCL § 600.5805(10)………………………………………………………………….7, 10

## INDEX OF AUTHORITIES

### Federal Cases

*Bell v. Ohio State Univ.*, 351 F.3d 240 (6th Cir. 2003)…………………………………………12

*Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local No. 12*, 646 F.3d 360 (6th Cir. 2011)…………………………………………………………13

*Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989)……………………………………...........13

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999)………………...5

*Dixon v. Anderson*, 928 F.2d 212 (6th Cir. 1991)………………………………………………10-14

*Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007)…………15

*Gallegos v. City of Battle Creek*, No. 1:10-CV-448, 2012 WL 1033693 (W.D. Mich. Mar. 1, 2012) unpublished………………………………………………………………………………...16

*Glenn v. Clement Twp.*, No. 05-10093-BC, 2006 WL 2092409 (E.D. Mich. July 27, 2006) unpublished………………………………………………………………………………………14

*King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015)…………………………5

*Manning v. Bolden*, 25 F. App'x 269 (6th Cir. 2001) unpublished………………………………7

*Nettles v. Bullington*, No. 1:17-CV-04, 2018 WL 1465843, (W.D. Mich. Mar. 26, 2018) unpublished………………………………………………………………………………………10

*Owens v. Okure*, 488 U.S. 235 (1989)…………………………………………………………5, 6

*Patmon v. Thomas*, 114 F.3d 1188 (6th Cir. 1997)………………………………………………7

*Paul v. Davis*, 424 U.S. 693 (1976)……………………………………………………………8, 9

*Rehberg v. Paulk,* 566 U.S. 356 (2012)………………………………………………………4-5

*Schepers v. Comm'r, Indiana Dep't of Correction*, 691 F.3d 909 (7th Cir. 2012)………………..9

*Sharpe v. Cureton*, 319 F.3d 259 (6th Cir. 2003)………………………………………………3

*Trzebuckowski v. City of Cleveland*, 319 F.3d 853 (6th Cir. 2003)……………………………12

*Wallace v. Kato*, 549 U.S. 384 (2007)………………………………………………………...10

*Wilson v. Garcia,* 471 U.S. 261 (1985)……………………………………………………..3-6, 8, 10

*Wolfe v. Perry*, 412 F.3d 707 (6th Cir. 2005)…………………………………………………12

**<u>Federal Statutes</u>**

42 U.S.C. § 1983………………………………………………………………………*passim*

**<u>Michigan Cases</u>**

*Schanedorf v. Consumers Energy Co*., 275 Mich. App. 507 (1998*)*…………………………….15

**<u>Michigan Statutes</u>**

MCL 28.720……………………………………………………………………………….1

MCL § 28.725a…………………………………………………………………………...11

MCL § 28.728……………………………………………………………………………11

MCL 28.729………………………………………………………………………………2

MCL § 600.5805(9)……………………………………………………………………7, 9

MCL § 600.5805(10)…………………………………………………………………7, 10

## COUNTER STATEMENT OF FACTS

Plaintiff herein states only those facts necessary to respond to *Michigan State Police Defendants' Motion to Dismiss and Brief in Support*.

While serving in Iraq, with the Michigan National in 2006 through 2007, another servicemember, as a prank, accused Plaintiff of being in possession of child pornography.  An investigation of Plaintiff's laptop computer was conducted and because no child pornography was found, there were no charges, arrests, or convictions levied against Plaintiff.  (Record 1, Complaint ¶23-26).

Four years later, after Plaintiff returned home from his tour of duty, Defendant Michigan State Police (MSP) Trooper Hurst falsely told Plaintiff that he was required to register as a sex offender due to a sex conviction for possession of child pornography.  (R. 1, ¶27).  Defendant Hurst then turned the matter over to Defendant MSP Detective Gochanour, who told Hurst and Defendant MSP Detective Cuevas to refer the matter to Defendants MSP Sex Offender Registry (SOR) Analysts Kelley and Marinoff.  (R. 1, ¶30-32).

On April 1, 2011, Defendants -- MSP Sex Offender Registry (SOR) Analysts -- Marinoff and Kelley fabricated a policy of "pre-registration," applicable only to Plaintiff; whereby they placed him on the SOR, in light of the fact that no underlying sex crime conviction existed. Defendants MSP SOR Analysts Marinoff and Kelley placed Plaintiff on the registry with a falsified conviction date of *April 4, 2011*, for possession of child pornography.  (R. 1, ¶33-35).

An arrest warrant was issued for Plaintiff for MCL 28.720 -- failure to comply with the SOR, a 4-year felony.  Plaintiff was arraigned on the felony charge on August 15, 2011.  At the arraignment in the District Court for the County of Hillsdale, Plaintiff informed the judge that he had never been arrested or convicted of a sex crime.  In response, then Hillsdale District Court Judge Sanderson informed Plaintiff that he would be required to prove his innocence by

1

producing his military paperwork.  However, because Plaintiff's military paperwork had been

lost, including his DD-214 which showed no such conviction, he was unable to make such a

showing, and his court-appointed attorney advised him to plea to the lesser misdemeanor charge

of failure to comply with the SOR act.  Upon the advice of counsel, Plaintiff plead to the lesser

charge, and began annually registering as a sex offender.  (R. 1, ¶36-41).

Years later, on July 30, 2014, Plaintiff was charged with MCL 28.729 -- failure to

register, a seven-year felony.  Again, his court-appointed attorney advised him to plead guilty, in

order to receive a lesser-sentence.  Upon the advice of counsel, Plaintiff did as he was instructed,

plead to the felony charge, and was sentenced to 180-days incarceration in the Hillsdale County

Jail on September 30, 2014.  (R. 1, ¶47-48).

Following his sentencing, and through his agents, Plaintiff filed Freedom of Information

Act requests with the MSP asking for information related to the phantom-conviction for child

pornography.  Indeed, Congressman Tim Walberg conducted his own investigation through the

Federal Bureau of Investigation, including a search of the National Crime Information Center,

relating to the erroneous registration of the Plaintiff.  At no point has any investigation by the

Plaintiff, his agents, or his congressman, ever turned up anything that states he was convicted of

any sex crimes.  (R. 1, ¶49-51).

On May 5, 2015, Hillsdale District Court Judge Lisznyai dismissed Plaintiff's prior,

erroneous charges for failure to comply and failure to register as a sex offender.  Plaintiff then

wrote to Defendants MSP SOR analysts Kelley and Marinoff, informing them of the judge's

findings and subsequent dismissal, and requested that he be removed from the SOR.  Defendants

refused to remove him from the registry.  Plaintiff went back to Judge Lisznyai and procured an

order removing him from the registry on October 1, 2015.  Thereafter, Defendants finally removed Plaintiff's falsified entry from the registry.

## ARGUMENT

**I.**   **IN MICHIGAN THE APPLICABLE STATUTE OF LIMITATIONS IN § 1983 EQUAL PROTECTION AND CONSTITUTIONAL DEFAMATION IS THE THREE-YEAR PERSONAL INJURY PROVISION: MICHIGAN COMPILED LAWS § 600.5805(10)**

It is well-established that, "[A]s an initial matter, the duration of the statute of limitations for § 1983 actions is governed by state law; however, federal standards govern when the statute begins to run.  *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) citing *Wilson v. Garcia,* 471 U.S. 261, 267, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

The Supreme Court, in *Wilson v. Garcia*, was looking to settle a circuit court split, and rectify the confusion and ambiguity of how to correctly apply the "barrowing" of statutes of limitations to claims brought under §1983 for the violation of Constitutionally guaranteed rights. In *Wilson*, the Plaintiff-Respondent Garcia, brought an action in Federal District Court under 42 U.S.C. § 1983 against a New Mexico State Police officer and the Chief of the State Police, seeking damages for unlawful arrest and excessive force by the officer. The complaint, filed two-years and nine months after the cause of action accrued, properly made out claims of excessive force, and failure to train and/or supervise, in violation of the Fourth, Fifth, and Fourteenth Amendment.  The defendants moved to dismiss "on the ground that the action was barred by the 2-year statute of limitations of the New Mexico Tort Claims Act. The District Court denied the motion, holding that the New Mexico statute providing a 4-year limitations period for "all other actions not herein otherwise provided for" applied to § 1983 actions brought in the State. On interlocutory appeal, the Court of Appeals affirmed the denial of the motion to dismiss but held that the appropriate statute of limitations for § 1983 actions brought in New Mexico was a New

3

Mexico statute providing a 3-year limitations period for personal injury actions.  The U.S.
Supreme Court affirmed the ruling of the Court of Appeals, holding that: "In view of our holding
that § 1983 claims are best characterized as personal injury actions, the Court of Appeals
correctly applied the 3-year statute of limitations governing actions 'for an injury to the person or
reputation of any person.' N.M.Stat.Ann. § 37–1–8 (1978)."  *Id.* at 280.

The Court in *Wilson* reasoned that the "characterization of all § 1983 actions as involving
claims for personal injuries minimizes the risk that the choice of a state statute of limitations
would not fairly serve the federal interests vindicated by § 1983." *Id.* at 279.  Essentially, the
Court found that where an action arises under the Constitution, such a claim is fundamentally
different than statutory or legislative rights: "Because of the fact that the right complained of is
not one conferred by legislature, the appropriate statute of limitations, is more appropriately that
which proscribes for general personal injury torts." *Id.* at 277-8:

> Although a few § 1983 claims are based on statutory rights, *Maine v. Thiboutot*,
> 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–2506, 65 L.Ed.2d 555 (1980), most
> involve much more. The rights enforceable under § 1983 include those guaranteed
> by the Federal Government in the Fourteenth Amendment: that every person
> within the United States is entitled to equal protection of the laws and to those
> "fundamental principles of liberty and justice" that are contained in the Bill of
> Rights and "lie at the base of all our civil and political institutions." These
> guarantees of liberty are among the rights possessed by every individual in a
> civilized society, and not privileges extended to the people by the legislature.

*Id.* at 278–79.

Since that time, the Supreme Court has not strayed from the rule set forth in *Wilson*[1]:

---

[1] See also *Rehberg v. Paulk*, 566 U.S. 356, 366 (2012) where Justice Alito, writing for the Court,
held that: "While the Court has looked to the common law in determining the scope of the
absolute immunity available under § 1983, the Court has not suggested that § 1983 is simply a
federalized amalgamation of pre-existing common-law claims, an all-in-one federal claim
encompassing the torts of assault, trespass, false arrest, defamation, malicious prosecution, and
more. The new federal claim created by § 1983 differs in important ways from those pre-existing
torts. It is broader in that it reaches constitutional and statutory violations that do not correspond

"This Court has concluded that all § 1983 claims should be characterized in the same way, as tort actions for the recovery of damages for personal injuries." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 691 (1999) (internal citations omitted).  The Court has even gone so far as to clarify the ruling, having found that there still existed confusion in the Circuits as to how to apply the rule:

> As the instant case indicates, *Wilson* has not completely eliminated the confusion over the appropriate limitations period for § 1983 claims. In States where one statute of limitations applies to all personal injury claims, *Wilson* supplies a clear answer. Courts considering § 1983 claims in States with multiple statutes of limitations for personal injury actions, however, have differed over how to determine which statute applies.

*Owens v. Okure*, 488 U.S. 235, 241 (1989).  The Court in *Owens* went on to hold, again, that:

 "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 249–50.

Accordingly, the Circuits have since applied the rule of *Wilson (*and *Owens)*:

> The inevitable result of this approach, in the Court's view, would be that **"different statutes of limitations would be applied to the various § 1983 claims arising in the same state."** To avoid this result, the Court determined that all § 1983 claims should be subject to "a simple, broad characterization" as personal injury actions for limitations purposes.

*King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 760 (5th Cir. 2015) (internal citations omitted) (emphasis in original).

---

to any previously known tort. See *Kalina,* 522 U.S., at 123, 118 S.Ct. 502. But it is narrower in that it applies only to tortfeasors who act under color of state law. See *Briscoe, supra,* at 329, 103 S.Ct. 1108. **Section 1983 "ha[s] no precise counterpart in state law.... [I]t is the purest coincidence when state statutes or the common law provide for equivalent remedies; any analogies to those causes of action are bound to be imperfect."** *Wilson v. Garcia,* 471 U.S. 261, 272, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (internal quotation marks and citation omitted). Thus, both the scope of the new tort and the scope of the absolute immunity available in § 1983 actions differ in some respects from the common law." (emphasis added)

> While *Wilson* accordingly directed courts to apply state personal injury statutes of limitations to § 1983 claims, confusion remained as to the appropriate limitations period for § 1983 claims in states with more than one statute for personal injury actions. *Owens,* 488 U.S. at 241, 109 S.Ct. 573. **Some courts applied periods assigned to "certain enumerated intentional torts," while other courts "endorsed the use of the state residuary statute of limitations."** *Id.* **The Supreme Court was thus compelled to clarify its holding from** *Wilson,* **which it did in** *Owens* **by recognizing that the same concerns for simplicity and predictability that motivated** *Wilson* **also favored application of the "general or residual statute for personal injury actions" in situations where multiple personal injury limitations periods could apply.** *Id.* at 248–50, 109 S.Ct. 573. The Court noted that some states had a "general provision which applie[d] to all personal injury actions with certain specific exceptions," while others had "a residual provision which applie[d] to all actions not specifically provided for." *Id.* at 246–47, 109 S.Ct. 573. But in either case, the Court recognized that "each State would have no more than one" residual or general limitations period, and it concluded that this single, "easily identifiable" period should govern all § 1983 claims regardless of their factual underpinnings. *Id.* at 247–48, 109 S.Ct. 573.

*Id.* (emphasis added).

The Sixth Circuit is no exception to the well-established rule, and even went so far as to correct its prior rulings in order to square the jurisdiction with Supreme Court rulings in *Wilson* and *Owens.*

> Thus, it is evident that the holdings in *Mulligan* and *Carroll* are inconsistent with regard to the appropriate statute of limitations in states wherein different limitations periods exist for intentional torts causing personal injury and nonintentional personal injury actions.

* * *

> The Supreme Court has resolved this conflict in its holding in *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), wherein the Court rejected the approach adopted by this court in *Mulligan.* **The Court unanimously held that when a state, like Ohio, has multiple statutes of limitation for personal injury actions, the appropriate state statute of limitations to borrow for claims brought under 42 U.S.C. § 1983 is the residual or general personal injury statute of limitations, not any statute of limitations for specific intentional torts.** *Id.* 109 S.Ct. at 582.

*Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989) emphasis added.  In that case, plaintiff brought a §1983 equal protection suit against county officials, challenging their application of

6

regulations against his business.  As stated above, the Sixth Circuit found that the applicable

state statute of limitation in a §1983 suit, regardless of the type of civil rights claims or the

enumerated state tort statutes of limitations, is the state's general personal injury provision.  *Id.*

In another equal protection case out of the Sixth Circuit, the Court again found that in

cases brought in Michigan, under Section 1983, the three-year statute of limitations applies:

> On January 3, 1995, plaintiff filed this action. Proceeding under 42 U.S.C. § 1983,
> he asserted that defendants have been violating his constitutional rights and
> requested the District Court to enjoin his ongoing grievance procedures. His
> primary claim in his complaint was that the procedures regarding attorney
> discipline in Michigan violate the Due Process clause and deny
> him equal protection.
>
> * * *
>
> State law regarding general personal injury provides the statute of limitations for
> § 1983 claims. See, *e.g., Wilson v. Garcia,* 471 U.S. 261 (1985). Under Michigan
> law, a three-year statute of limitations applies to this case. *See* Mich. Comp.
> Laws § 600.5805(8); *Carroll v. Wilkerson,* 782 F.2d 44, 45 (6th Cir.1986).

*Patmon v. Thomas*, 114 F.3d 1188 (6th Cir. 1997) (See also, *Manning v. Bolden*, 25 F. App'x

269, 270–71 (6th Cir. 2001), an unpublished opinion finding that Michigan three-year general

personal injury statute of limitations provision applied to § 1983 claims, including equal

protections claims).  Therefore, equal protection claims brought in Michigan Federal Courts

under § 1983, apply the three-year general personal injury statute of limitation, provided in MCL

§ 600.5805(10).

### b.  The Three-Year Statute of Limitation Applies to Constitutional Defamation Claims Brought Under § 1983

Defendants' brief devotes merely one sentence to support their contention that "MCL §

600.5805(9) provides that any action for defamation must be filed within one year."

(*Defendants' Brief in Support of Motion to Dismiss at 1*).  While it is true that that enumerated

tort has a specified statute of limitation, Defendants' assertion, to the extent that it can be read as

such, is a misstatement of the applicable law, (also discussed *supra*):

> The Supreme Court has resolved this conflict in its holding in *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), wherein the Court rejected the approach adopted by this court in *Mulligan*. **The Court unanimously held that when a state, like Ohio, has multiple statutes of limitation for personal injury actions, the appropriate state statute of limitations to borrow for claims brought under 42 U.S.C. § 1983 is the residual or general personal injury statute of limitations, not any statute of limitations for specific intentional torts.** *Id.* 109 S.Ct. at 582.

*Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989) (emphasis added).  The same holds

true for the Michigan statutes of limitations, for the reasons previously discussed.

Furthermore, and wholly in keeping with the law of the Supreme Court and the Sixth

Circuit, (discussed *supra*), "Because of the fact that the right complained off is not one conferred

by legislature, the appropriate statute of limitations, is more appropriately that which proscribes

for general personal injury torts."  *Wilson v. Garcia*, 471 U.S. 261, 277-8 (1985).  A §1983 claim

for Constitutional Defamation brought under the Fourteenth Amendment is no exception this

rule.

In *Paul v. Davis*, the Court outlined the contours of a §1983 Constitutional Defamation

claim.  In that case, the plaintiff had been previously charged with shoplifting.  During the

pendency of his criminal case, the police defendants circulated flyers, showing the face of the

plaintiff, and referring to him as an active shoplifter.  The charges against the plaintiff were

dismissed shortly after circulation of the flyer.  The flyer came to the attention of the plaintiff's

boss, who advised him "not to find himself in that situation again," but did not terminate his

employment.

The plaintiff brought a §1983 claim for defamation under the Fourteenth Amendment.

The District Court dismissed for failure to state a claim, and the Sixth Circuit reversed the

District Court.  The Supreme Court however, reversed the ruling of the Sixth Circuit.  The Court

found that in order to state a §1983 claim for defamation there must be what is commonly

referred to as "stigma-plus."  This means that in order to make out a valid claim for

Constitutional defamation, a plaintiff must show: 1) a defamatory act (the "stigma") and 2) that

the stigma resulted in the deprivation of a constitutionally protected liberty interest.  *Paul v.*

*Davis*, 424 U.S. 693, 712 (1976) The Court summed it this way:

> Respondent in this case cannot assert denial of any right vouchsafed to him by the
> State and thereby protected under the Fourteenth Amendment. That being the
> case, petitioners' defamatory publications, however seriously they may have
> harmed respondent's reputation, did not deprive him of any "liberty" or
> "property" interests protected by the Due Process Clause.

*Id.*

In another §1983 Constitutional defamation case arising out of mistakes made on a SOR, the

Seventh Circuit allowed the claim to move forward where the Court found State defendants

mistakenly registered plaintiffs on the Indiana SOR as "sexually violent predators" and refused

to rectify their error: "We are satisfied that plaintiffs have shown that the kind of registry

mistakes they have alleged here implicate a liberty interest protected by the Due Process

Clause."  *Schepers v. Comm'r, Indiana Dep't of Correction*, 691 F.3d 909, 915 (7th Cir. 2012)

In the instant matter, the defamatory act, or "stigma" was where the Defendants registered

Plaintiff on the SOR, which resulted in the "plus" element of the claim, when his liberty interest

was implicated by virtue of his incarceration for failure to register as a sex offender on

September 30, 2014.  Because his claim arises from, and indeed, does not exist but for a

violation of his Constitutional liberty, it is wholly apart and distinct, from the "libel or slander"

claim contemplated in MCL § 600.5805(9).  As such, the Supreme Court, in addressing the issue

of the appropriate statute of limitation, reasoned that: "**Section 1983 "ha[s] no precise**

**counterpart in state law.... [I]t is the purest coincidence when state statutes or the common**

**law provide for equivalent remedies; any analogies to those causes of action are bound to**

**be imperfect.**" *Wilson v. Garcia,* 471 U.S. 261 at 272 (1985) (emphasis added) (internal quotations marks and citation omitted).  As a result of the well-established Supreme Court precedent, as well as the law of the Sixth Circuit, the appropriate statute of limitations in a §1983 claim for Constitutional defamation, is the three-year general personal injury provision set forth in MCL § 600.5805(10)[2].

## II.    PLAINTIFF'S CLAIMS ACCRUED ON OR AFTER SEPTEMBER 30, 2014 AND ARE THEREFORE TIMELY

While the Federal Courts look to State law for the appropriate statute of limitation for §1983 suits, the date upon which the claim accrues is a matter of Federal law.  "While we have never stated so expressly, the accrual date of a §1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384 at 388 (2007) (emphasis in original)  A claim accrues, and, with some exception, the statute of limitation begins to run when:

> the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 273 (citations omitted). In determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights.

*Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991).  In the instant matter, Plaintiff, a mechanic, trained while serving in the Michigan National Guard, is not a lawyer, and has never

---

[2] See also the Western Federal District of Michigan case, *Nettles v. Bullington*, No. 1:17-CV-04, 2018 WL 1465843, at \*2–3 (W.D. Mich. Mar. 26, 2018) [Plaintiff filed this lawsuit on January 3, 2017. She brings claims under 42 U.S.C. § 1983 for violations of the First Amendment and Fourteenth Amendments (Counts I and II); **a claim for defamation** (Count III). . . A three-year statute of limitations applies to section 1983 claims filed in Michigan. *See* Mich. Comp. L. 5805(10) (establishing three-year statute of limitations for "all actions to recover damages for the death of a person, or for injury to a person or property" except as otherwise provided)];

studied law.  However, from the time of his initial arrest in 2011 until 2015, every person with a law degree and a license to practice law who had a duty to advise the Plaintiff of his legal rights, advised him to plead guilty or no contest to the charges of failure to comply and failure to register as a sex offender, even going so far as to instruct him to prove his own innocence.  Thus, because the sworn, licensed, professionals were actively misleading the Plaintiff as to his legal rights, it cannot be said the he had reason to know that any claims may have accrued.  This precise lack of knowledge is demonstrated by his guilty and no contest pleas, despite not having any convictions or charges for any underlying sex offenses.

Furthermore, Plaintiff was unaware that he was in a class of one, by virtue of being to an ad-hoc, and indeed fabricated, policy of "pre-registration," until after he was incarcerated on September 30, 2014.  Therefore, he could not reasonably have known that any equal protection claim was available to him, until after a more thorough investigation had been conducted that illuminated the "pre-registration" policy; an investigation that should have been conducted by the those appointed to advise him and prosecute his legal rights, as well as the Defendants themselves, who are charged under Michigan Statute, with the duty of maintaining an accurate registry.  MCL § 28.728 & § 28.725a

As to the Constitutional Defamation claim, it would have also been impossible for Plaintiff to reasonably be aware of the claim prior to September 30, 2014, because his claim did not exist prior to that date.  This is because it was his incarceration on September 30, 2014 that implicated his Constitutionally protected liberty interest required to constitute a §1983 claim for defamation.

Alternatively, it can be reasonably said that the statute of limitations on his claims did not begin to run until nearly a year later, on May 5, 2015, when the District Judge dismissed his

charges, or, even later, on October 1, 2015, when the same Judge ordered Defendants to remove

Plaintiff from the registry, almost *six months after* his charges had already been dismissed.  Such

a reading of the accrual date would be consistent with the law of the Sixth Circuit, which held

that: "Therefore, the statute of limitations on Trzebuckowski's § 1983 claim began to run on

September 12, 1995, the date the municipal court dismissed the charges against him."

*Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 857 (6th Cir. 2003).  Two years later, the

Sixth Circuit held consistent with that position:

> We have held, however, that in light of the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), "[a] cause of action under § 1983 that would imply the invalidity of a conviction does not accrue until the conviction is reversed or expunged, and therefore the statute of limitations does not begin to run until such an event occurs, if ever." *Shamaeizadeh,* 182 F.3d at 396.

*Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005).  Thus, under either theory, Plaintiff's claim

was timely, and can be reasonably said to have been filed a year prior to the statutory deadline.

**b.  Alternatively, the "Continuing Violation" Doctrine Is Applicable In This Case, and Other § 1983 Cases Arising in Michigan**

The "Continuing Violation doctrine" is best understood as an exception to the date upon

which a statute of limitations accrues.  The concept was summarized by the Sixth Circuit in a

2003 opinion:

> The exceptions to that rule are two: where the plaintiff can show prior discriminatory activity that continues into the present, as opposed to prior discriminatory activity whose effects continue into the present, *see Tolbert v. State of Ohio Dept. of Transp.,* 172 F.3d 934, 940 (6th Cir.1999); and where the plaintiff can show "a longstanding and demonstrable policy of discrimination." *Dixon,* 928 F.2d at 217. Ms. Bell contends that she has presented evidence sufficient to require the application of both of these "continuing violation" exceptions.

*Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)  Thus, there are two types of

continuing violations applicable to analyzing when a claim accrues under §1983.  "This

court most commonly applies the continuing-violation doctrine in Title VII cases, *id.,* but has considered applying it to claims under § 1983, *see, e.g., Tolbert v. Ohio Dep't of Transp.,* 172 F.3d 934, 940–41 (6th Cir.1999)." *Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local No. 12*, 646 F.3d 360, 366 (6th Cir. 2011).

### 1.   The First Type of Continuing Violation

As the Courts have explained, the first type of continuing violation exception, involves multiple illegal acts, even where the act is the same, over and over.  "Thus limitations periods begin to run in response to discriminatory *acts* themselves, not in response to the continuing *effects* of past discriminatory acts."  *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991)  In *Dixon* the Court cited to an example of an employer paying people disparate amounts *each time* he paid them.  Effectively, the Court found that, in such a case, the acts of the employer were enough to continue the statute of limitations, with each pay period. *Id.*

Similarly, in the instant matter, by continuing to publish Plaintiff's name on the SOR, with a falsified conviction date, even after his charges for failure to register were dismissed, Defendants continued the violations, and thus the statute of limitations continued.  The same holds true as to the equal protection claim, where the Defendants continued to apply their "pre-registration" policy to only the Plaintiff, following each charge of failure to comply, and even after the dismissal of those charges.

### 2.   The Second Type of Continuing Violation

The Sixth Circuit in *Dixon* summarized the second type of continuing violation:

The second category of "continuing violation" arises where there has occurred "a longstanding and demonstrable policy of discrimination." *Penton*, 851 F.2d at 838. Unrelated incidents of discrimination will not suffice to invoke this exception; rather, there must be a continuing "over-arching policy of

discrimination." *Janikowski v. Bendix Corp.,* 823 F.2d 945, 948 (6th Cir.1987). Generally, "[r]epeated requests for further relief from a prior act of discrimination will not set the time limitations running anew." *Id.* at 949. However, where there has been a long-standing policy of discrimination, *repeated* attempts to gain employment or promotions may *each* trigger the running of a new limitations period. *Roberts v. North American Rockwell Corp.,* 650 F.2d 823, 827 (6th Cir.1981).

*Dixon v. Anderson*, 928 F.2d 212, 217 (6th Cir. 1991).  In that case, school employees brought an equal protection challenge to a statutory scheme pertaining to the retirement benefits.  The Court found that the doctrine did not apply in the circumstances of that case because there was no illegal act that occurred within Ohio's two-year statute of limitations.  *Glenn v. Clement Twp*., a case out of the Eastern Federal District Court of Michigan, proves illustrative of this point:

> However, the plaintiffs' equal protection claim is not barred by the statute of limitations. . .
>
> The defendant is alleged to have treated others differently than the plaintiffs within the limitations period. . .
>
> If the college has, since denying Perez additional pay, paid such compensation to another faculty member who, like Perez, has a doctorate degree outside his teaching field, then the statute does not bar his claim. If, however, any such practice ceased more than two years ago, Perez would be asserting neither a continuing violation manifested by a number of incidents nor a continuing unlawful policy or practice.
>
> Because the plaintiffs here have alleged that the defendant failed to enforce the ordinance against others within the limitations period, the equal protection claim is not barred by the statute of limitations.

*Glenn v. Clement Twp.*, No. 05-10093-BC, 2006 WL 2092409, at *9 (E.D. Mich. July 27, 2006)

In the instant case, Plaintiff has alleged that he was placed on the SOR where he had no underlying convictions for a sex crime, due to a policy of "pre-registration" by Defendants Kelley and Marinoff. (R. 1, ¶33) Plaintiff further alleged that the policy of "pre-registration" vis-à-vis registering people on the SOR where there was no sex crime conviction, was only applied to him, and not to others without sex crime convictions.  (R. 1, ¶61) Therefore, the Defendants

14

maintained a discriminatory policy, that continued with each conviction for failure to comply/register with the SOR, and even after those charges were dismissed, in spite of Plaintiffs protestations.

The Sixth Circuit laid out the test for whether a continuing violation in a civil rights case exists as follows:  "First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern.... Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff must have been avoidable if the defendants had at any time ceased their wrongful conduct."  *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007).  Here, the MSP Defendants' wrongful conduct of keeping Plaintiff on the registry clearly continued long after he was "pre-registered" in 2011. Secondly, the injury to the Plaintiff continued to accrue, as evidenced by his incarceration for failure to register in 2014.  Third, his incarceration would never have happened, had the Defendants ceased keeping an innocent man on the SOR.  Thus, the test for whether or not the continuing violation doctrine applies to Plaintiff is clearly met.

Finally, Contrary to the contention of Defendants' in their *Brief in Support,* and citation to *Schanedorf v. Consumers Energy Co*., 275 Mich. App. 507, 517 (1998*)* a case that has no bearing or controlling weight on this Honorable Court, the "Continuing Violation" or "Continuing Wrongs" doctrine is valid as applied to § 1983 cases arising in Michigan and litigated in Federal Court.  This point was addressed by the Western Federal District Court of Michigan, in a thoughtful report and recommendation by the Honorable Magistrate Judge Brenneman, adopted by Honorable Judge Jonker in 2012:

> The City points out that in *Garg v. Macomb County Community Mental Health Services,* 472 Mich. 263, 696 N.W.2d 646, *amended* 473 Mich. 1205, 699 N.W.2d 697 (2005), the Michigan Supreme Court eliminated the "continuing violations doctrine" which had been read into Michigan's statute of limitations, M.C.L. §

15

600.5805 and applied in certain state civil rights actions. **However, this court is not bound by *Garg*.** While § 1983 borrows the state's statute of limitations, federal law determines when that statute of limitations begins to run and whether a continuing violation occurred. *See Wallace,* 549 U.S. at 388; *Eidson,* 510 F.3d at 635; *Sharpe,* 319 F.3d at 266.

*Gallegos v. City of Battle Creek*, No. 1:10-CV-448, 2012 WL 1033693, at *12 (W.D. Mich. Mar. 1, 2012), report and recommendation approved, No. 1:10-CV-448, 2012 WL 1029930 (W.D. Mich. Mar. 27, 2012). (emphasis added)

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Honorable Court DENY Michigan State Police Defendants' Motion to Dismiss.

Respectfully submitted,

KLAUS LAW P.L.L.C.,
/s/  Nicholas H. Klaus_____
Nicholas H. Klaus (P81076)
*Attorney for Plaintiff*
P.O. Box 7506
Ann Arbor, MI  48107
313-757-2052

Dated:  June 5, 2018                                    nicholas@klauslawpllc.com

16