UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW FETHER,

    Plaintiff,

v

HILLSDALE COUNTY, a Municipal Corporation, HILLSDALE COUNTY SHERIFF DEPARTMENT, HILLSDALE COUNTY SHERIFF DEPARTMENT'S DEPUTY KWINN LEVA, in her individual and official capacity, ASSISTANT PROSECUTOR VALERIE WHITE, in her official and individual capacity; MICHIGAN STATE POLICE TROOPERS THOMAS HURST, CYNTHIA GOCHANOUR, and TONY CUEVAS, and MICHIGAN STATE POLICE SEX OFFENDER REGISTRY ANALYSTS MELISSA MARINOFF, and MARCI KELLEY, in their individual capacities,

    Defendants.

No. 1:17-cv-878

HON. JANET T. NEFF

MAG. JUDGE ELLEN S. CARMODY

---

Nicholas H. Klaus (P81076)
Klaus Law PLLC
Attorney for Plaintiff
P. O. Box 7506
Ann Arbor, MI 48107
(313) 757-2052

Adam P. Sadowski (P73864)
Attorney for Defendants Hurst, Cuevas, Gochanour, Kelley, and Marinoff
Michigan Department of Attorney General
Civil Litigation, Employment & Elections Division
P. O. Box 30736
Lansing, MI 48909
(517) 373-6434

/

# STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

The only remaining Defendants, through their attorneys Bill Schuette, Attorney General for the State of Michigan, and Adam P. Sadowski, Assistant Attorney General, submit this reply brief in support of their motion to dismiss and request that this Honorable Court to dismiss Plaintiff's claims as the complaint was filed outside of the statute of limitations.

### 1.     Plaintiff's claims accrued over six years prior to filing his complaint.

Plaintiff is attempting to have his cake and eat it too. Plaintiff wants to argue that the "stigma-plus" portion of his constitutional defamation claim delayed the accrual of his claim by years and argues that the "stigma" was when "the Defendants registered Plaintiff on the SOR". Plaintiff's response at pg. 9. But, then attempts to split the "plus" aspect of the claim and argue that it was only met when he became incarcerated. However, courts have rejected this argument when it comes to the sex offender registries. Specifically, in a case relied on by Plaintiff, the Seventh Circuit has recognized:

> The district court held that the class members meet both parts of the "stigma plus" test. The DOC does not challenge that holding on appeal, and so any argument on this issue is therefore forfeited. It did argue before the district court, however, that the plaintiffs had failed to assert a liberty interest; since this case is being remanded, we think it prudent to discuss the matter briefly. The plaintiff class here is complaining about much more than the kind of simple reputational interest asserted by respondent Davis in the Supreme Court's case. The Indiana statute deprives members of the class of a variety of rights and privileges held by ordinary Indiana citizens, in a manner closely analogous to the deprivations imposed on parolees or persons on supervisory release. Citizens do not need to report to the police periodically, nor is their right to travel conditioned on notifications to the police in both the home and the destination jurisdiction. Unlike Schepers, who was forbidden from living within 1,000 feet of a school or park while he was categorized as a sexually violent predator,

members of the public are free to decide where they wish to live. **These restrictions, in our view, fit the requirement in *Paul v. Davis* of an alteration in legal status that takes the form of a deprivation of rights under state law.**

*Schepers v. Commissioner*, 691 F.3d 909, 914 (7th Cir. 2012). Emphasis added.

All of the above would have applied to Plaintiff long before he was incarcerated. Plaintiff had reached the "stigma-plus" stage when he was first pre-registered on the Sex Offender Registry in 2011. Just because he is alleging further damage by the same acts that ultimately lead to incarceration by his decision to take a plea deal with non-state entities, he had many restrictions before that including being required to comply with all of the provisions of SORA.

The Sixth Circuit has held that "loss of the right to purchase alcohol" met the "plus" portion of the stigma-plus test. *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999). Additionally, the Sixth Circuit has addressed Michigan's SORA and found portions to be criminal punishment which would go beyond the right to purchase alcohol by stating:

> Sex Offenders are forced to tailor much of their lives around these school zones, and, as the record demonstrates, they often have great difficulty in finding a place where they may legally live or work. Some jobs that require traveling from jobsite to jobsite are rendered basically unavailable since work will surely take place within a school zone at some point.
>
> *   *   *
>
> Finally, SORA also resembles the punishment of parole/probation. In *Smith*, which involved nothing more than reporting requirements, the Court took seriously the claim that the Alaska statute resembled parole/probation, acknowledging that "[t]his argument has some force, but," concluding that it was ultimately dissimilar because, unlike parolees, "offenders subject to the Alaska statute are free to move

>where they wish and to live and work as other citizens, with no supervision." 538 U.S. at 101. Under SORA, by contrast, registrants are subject to numerous restrictions on where they can live and work and, much like parolees, they must report in person, rather than by phone or mail. Failure to comply can be punished by imprisonment, not unlike a revocation of parole. And while the level of individual supervision is less than is typical of parole or probation, the basic mechanism and effects have a great deal in common. In fact, many of the plaintiffs have averred that SORA's requirements are more intrusive and more difficult to comply with than those they faced when on probation.
>
>In sum, while SORA is not identical to any traditional punishments, it meets the general definition of punishment, has much in common with banishment and public shaming, employs geographical restrictions similar to those employed by punitive sun-down laws, and has a number of similarities to parole/probation.

*Doe v. Snyder*, 834 F.3d 696, 702-03 (6th Cir. 2016)

Quite simply, Defendants' alleged conduct occurred and any such claims accrued well over three years prior to Fether filing his Complaint. Plaintiff cannot unilaterally toll the statute of limitations in this matter by claiming he "is not a lawyer, and has never studied law". Plaintiff's Response at pgs. 10-11. One, ignorance of the law is no excuse in this case. *United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999). Two, Plaintiff himself certainly should have known that he was not convicted of a sex crime or that he never possessed child pornography!

### 2. The Statute of Limitations Was Not Tolled By Any "Continuing Violation"

Fether sat on his rights. He would have known over three years prior to the filing of his complaint that he was not convicted of nor has he ever possessed child pornography. He sat on his right to trial to prove his innocence in the first criminal case and after that case, did nothing to have himself removed from the registry

until numerous years later. If a plaintiff were able to argue that the mere fact he was still being damaged from previous acts as a way to toll the statute of limitations, most personal injury and civil rights cases would never be time-barred, but that is not the law.

The Sixth Circuit has made clear that any continuing violations doctrine under § 1983 is narrow. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 857 (6th Cir. 2003). Cases have only went on to further define the "subtle difference between a continuing violation and a continuing effect of a prior violation. These cases hold that the 'the limitations periods begin to run in response to discriminatory acts themselves, not in response to the continuing effects of past discriminatory acts.'" *Id.* at 858, citing *Dixon v. Anderson*, 928 F2d 212, 216 (6th Cir. 1991); *Cowell v. Palmer Township*, 263 F.3d 286 (3rd Cir. 2001), *McCune v. City of Grand Rapids*, 842 F.2d 903 (6th Cir. 1988). See also *Bell v. Ohio State Univ.,* 351 F.3d 240, 247 (6th Cir. 2003).

Nothing done by the State Defendants within the three years of filing of the complaint was a new act or alleged violation of Fether's rights. Like in *Trzebuckowski*, the "fact that he believed the possibility of enforcement existed as a result of the state appellate decision is the ill effect of the earlier violation of his rights, not a new act or violation of his rights." *Trzebuckowski,* 319 F.3d at 858. Allegedly, Fether's first conviction was the result, in part, of the State Defendants' conduct, beyond that, it was merely the ill effects that continued. Fether should have filed his Complaint within three years of being pre-registered on the registry,

not over six years later. Fether sat on his rights and his Complaint is time-barred regardless of the § 1983 theory of liability.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants respectfully request that this Honorable Court enter an Order dismissing the claims against them in their entirety and with prejudice as all claims are time-barred, together with any other relief that the Court determines to be appropriate under the circumstances.

Respectfully submitted,

Bill Schuette
Attorney General

*/s/ Adam P. Sadowski*
Adam P. Sadowski (P73864)
Assistant Attorney General
Attorney for State Defendants
Civil Litigation, Employment &
Elections Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
sadowskia@michigan.gov
P73864

Dated: June 19, 2018